KURT G. CALIA, SBN 214300
EVAN R. COX, SBN 133229
COVINGTON & BURLING
One Front Street
San Francisco, CA  94111
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091

Attorneys for Amicus Curiae
San Francisco Medical Society

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC. and PLANNED PARENTHOOD GOLDEN GATE, <br><br> Plaintiff, <br><br> v. <br><br> JOHN ASHCROFT, Attorney General of the United States, in his official capacity, <br><br> Defendant. | Civil Case No.:  C 03-04872 (PJH) <br><br> **BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL ASSOCIATION AND SAN FRANCISCO MEDICAL SOCIETY IN SUPPORT OF PLANNED PARENTHOOD** |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................. 2

    A.    The Discovery Requests ...................................................... 2

    B.    Description and Interest of Amicus Curiae SFMS ............... 3

III.  ARGUMENT ..................................................................................... 3

    A.    The Privacy of Medical Information is Critical to the Integrity of
    the Physician-Patient Relationship. .................................... 4

        1.    Protecting the privacy rights of patients in their medical
        records is essential to preserving human dignity. ................ 4

        2.    Disclosure of patient medical records will cause a chilling
        effect on physician-patient communications. ..................... 5

    B.    Confidentiality of Medical Information Must Be Stringently
    Protected and Maintained. ................................................... 7

        1.    The Health Insurance Portability and Accountability Act of
        1996 and California law precludes an order compelling
        disclosure of these records. ................................................ 8

        2.    Federal common law recognizes a physician-patient
        privilege which precludes an order compelling disclosure of
        these records. .................................................................... 15

    C.    Physicians Who Perform Abortions May Face Increased Dangers
    if Their Identities Are Disclosed. ....................................... 16

IV.   CONCLUSION ................................................................................ 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Eisenstadt v. Baird*
405 U.S. 438 (1972) ........................................................................... 8

*Jaffee v. Redmond*
518 U.S. 1 (1996) ........................................................................ 15, 16

*Loving v. Virginia*
388 U.S. 1 (1967) ............................................................................. 8

*National Abortion Federation*
2004 U.S.Dist. LEXIS 1701 ........................................... 7, 8, 9, 11, 12

*Pierce v. Society of Sisters*
268 U.S. 510 (1925) .......................................................................... 8

*Prince v. Massachusetts*
321 U.S. 158 (1944) .......................................................................... 8

*Skinner v. Oklahoma*
316 U.S. 535 (1942) .......................................................................... 8

*United States ex. rel. Stewart v. Louisiana Clinic*
2002 U.S.Dist. LEXIS 24062 ......................................................... 9, 10

*United States. v. Chase*
340 F.3d 978 (9th Cir. 2003) ......................................................... 4, 6, 8

## STATE CASES

*Binder v. Superior Court*
196 Cal.App.3d 893 ........................................................................ 10

*Board of Medical Quality Assurance v. Gherardini*
93 Cal.App.3d 669 ..................................................................... 10, 11

*Brillantes v. Superior Court*
51 Cal.App.4th 323 ......................................................................... 10

*Britt v. Superior Court*
20 Cal.3d 844 ............................................................................ 10, 11

*Chico Feminist Women's Health Center v. Scully*
208 Cal.App.3d 230 ........................................................................ 10

*Jones v. Superior Ct.*
119 Cal.App.3d 534 ............................................................... 8, 10, 11

*Palay v. Superior Court*
18 Cal.App.4th 919 ......................................................................... 10

*People v. Stockton Pregnancy Control Medical Clinic Inc.*, 203 Cal.App.3d 225 ................................................................ 10

*Planned Parenthood Affiliates v. Van de Kamp* 181 Cal.App.3d 245 ......................................................................... 10

*Planned Parenthood Golden Gate v. Superior Court* 83 Cal.App.4th 347 ................................................................. 11, 17

*R.K. v. Ramirez* 887 S.W.2d 836 ................................................................................. 5

*Rudnick v. Superior Court* 11 Cal.3d 924 ................................................................................. 10

*Urbaniak v. Newton* 226 Cal.App.3d 1128 ........................................................................ 10

*Valley Bank of Nevada v. Superior Court* 15 Cal.3d 652 ................................................................................. 11

*Wood v. Superior Court* 166 Cal.App.3d 1138 .............................................................. 10, 11, 12

**FEDERAL STATUTES**

45 C.F.R. §160.203 ........................................................................... 9

45 C.F.R. § 164.512(e) ...................................................................... 9

Fed. R. Evid. 501 ............................................................................ 15

Health Insurance Portability and Accountability Act of 1996, Pub.L.No. 104-191 .................... 8

**STATE STATUTES**

Cal. Code of Civil Procedure § 2016 (b) ......................................... 10

Cal. Const., Art. I, sec.1 ................................................................ 10

Cal. Evid. Code, § 992 ............................................................... 9, 10

**MISCELLANEOUS**

Goldman, J., *Protecting Privacy To Improve Health Care* Health Affairs (Nov./Dec. 1998).................................................... 6

Gostin, Lawrence O., *Health Information Privacy* 80 Cornell L.Rev. 451 ...................................................................... 5

Harris, Roger E., *The Need to Know Versus the Right to Know: Privacy of Patient Medical Data in an Information-Based Society*
30 Suffolk U.L.Rev. 1183 ........................................................................... 5, 6, 13

Nickel, Danel Michelle, *Note: Casting the Discovery Net Too Wide: Defense Attempts to Disclose Nonparty Medical Records in a Civil Action*
 34 Ind.L.Rev. 479, 488 ................................................................................ 5, 7

Poulin, Anne Bowen, *The Psychotherapist-Patient Privilege After Jaffee v. Redmond: Where Do We Go from Here?*, 76 WASH. U. L.Q. 1341, 1405 ............... 6, 8

Sen Rep. No. 117, 103s Cong. 1st Sess., pp ................................................. 19

Taber's Cyclopedic Medical Dictionary 765 (15th ed. 1985) ............................ 3

U.S. Congress, Office of Technology Assessment, *Protecting Privacy in Computerized Medical Information*
OTA-TCT-576 (Washington D.C.; U.S. Gov. Printing Office, September 1993) ....... 6

Veatch, Robert M., *Medical Ethics* 89 (1997) .............................................. 4, 5

Welch, C., *Sacred Secrets—The Privacy of Medical Records*
345 New England J. Med. 371 ...................................................................... 7

Young, Chari J., Note, *Telemedicine: Patient Privacy Rights of Electronic Medical Records*
66 UMKC L. Rev. 921 (1998) ......................................................................... 6

I.      INTRODUCTION

The California Medical Association ("CMA") – the state's largest state medical association with more than 30,000 members -- exists to promote the science and art of medicine, the care and well being of patients, the protection of public health, and the betterment of the medical profession.  Likewise, the San Francisco Medical Society ("SFMS") -- a non-profit organization consisting of over 1200 physician members and of the 42 county organizations chartered by the California Medical Association -- advocates for the interests of San Francisco physicians and their patients in the interest of public health.  Adherence to these principles compels CMA and SFMS to file this amicus brief in opposition to defendant's Motion to Compel discovery of certain medical records.

Medical records are among the most sensitive of documents and their exposure to review by defendant in this very public litigation is an anathema to the settled privacy expectations of patients and their physicians.  Thus, disclosure of these records should be absolutely protected unless the need for those records overwhelmingly outweighs the loss of privacy protection that would occur if they were produced.  The women who made the difficult decision to have the abortion procedures at issue are not parties to this case and they have done nothing to voluntarily place their medical histories at issue; the same holds true for their medical providers.  The only reason that the most private details of these medical records would be disclosed in this litigation is because Planned Parenthood and others have stood up to challenge the constitutionality of the Partial-Birth Abortion Act of 2003 (the "Act").  The patients and their physicians should not be punished for having sought medical care from physicians affiliated with the plaintiffs, and should not have their most personal information injected into the public arena.  The government has no compelling need for the discovery sufficient to outweigh this interest.  Their fundamental right to the privacy of their medical information must not be breached.

If this Court does compel the production of these medical records, the consequences would be enormous, and would stretch far beyond the confines of this case.

Setting a precedent that courts may compel production of medical records detailing what is perhaps the most personal and sensitive of all medical procedures would result in a massive and understandable outcry from the public.  But perhaps even more fundamentally, the loss of public trust in the sanctity of the physician-patient relationship and the fear of public disclosure of intimate medical facts would result in a breakdown of the communication between doctor and patients necessary for effective medical care, and cause some patients to forego medical care altogether.

This Court must follow the lead of other courts that have refused to compel the disclosure of medical records in these circumstances.  To do otherwise would seriously erode the foundation of the medical community by destroying the ability of patients to communicate freely and effectively with their physicians and to seek medical care when necessary.

## II.   STATEMENT OF FACTS

### A.   The Discovery Requests

Among other documents, defendant seeks to compel the production from the City and County of San Francisco medical records of those patients who have had "(i) partial-birth abortions, . . . (ii) abortions involving the use of chemical injections to effect 'intrauterine fetal demise,' [or] . . .  (iii) abortions during which complications arose."  Notice of Motion and Def.'s Motion to Compel at 1.  From Planned Parenthood Federation of America, defendants seek to compel production of medical records of "all late-term abortions performed during the last year" at clinics in San Diego and Riverside Count, Kansas, Mid-Missouri, Los Angeles, New York City, Washington D.C. and Western Pennsylvania, without redaction of the name of the member affiliate where the abortions were performed and without redaction of the name of the physician who performed the procedure.  *Id.*  From Planned Parenthood Golden Gate, defendant seeks to compel production of medical records already produced "without redaction of the name of the physician who performed the procedure."  *Id.*

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

2

**B.     Description and Interest of Amicus Curiae**

The California Medical Association and the San Francisco Medical Society exist to promote and develop the science and art of medicine, to conserve and protect the public health, to promote the betterment of the medical profession, and to cooperate with organizations of like purposes.  Their members, whatever their beliefs about abortion, share an interest in opposing actions that threaten the confidentiality of patient's medical records, put at risk the physician patient relationship, and interfere with a physician's ability to exercise his of her best medical judgment, in light of years of training, to arrive at the appropriate care of a patient.  In order to remain true to their principles, CMA and SFMS oppose the Motion to Compel, as it clearly interferes with patients' privacy rights, will severely harm doctor-patient communication, and will result in a step backwards in the quality of care that CMA and SFMS's members strive to achieve.

**III.     ARGUMENT**

This case involves issues that strike at the heart of the physician-patient relationship: the privacy of patient medical information and the freedom of a patient and physician to make health care choices free of the threat of scrutiny.  Physicians' duty to protect the confidential communications between themselves and their patients lies at the very core of the medical profession.  The Hippocratic Oath declares that "Whatever, in connection with my professional practice, or not in connection with it, I see or hear, in the life of men, which ought not to be spoken abroad, I will not divulge as reckoning that all such should be kept secret." *See* Taber's Cyclopedic Medical Dictionary 765 (15th ed. 1985) (Oath of Hippocrates).  This sacrosanct concept of confidentiality must be protected, especially in a case where the medical records address abortion, one of the most sensitive and personal medical procedures in existence.  CMA and SFMS believe that, if a physician and a patient conclude that an abortion is warranted, the patient should be able to seek and obtain that treatment without fear that doing so could result in the exposure of their medical records to government scrutiny and potential public disclosure.

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

3

**A.    The Privacy of Medical Information is Critical to the Integrity of the Physician-Patient Relationship.**

Confidentiality is the fundamental cornerstone of a meaningful and effective physician-patient relationship.  Patients are routinely required to disclose private and even embarrassing information to physicians who are entrusted to protect this information from unwarranted disclosures.  Only within this trusting relationship can physicians provide effective treatment and preserve the basic human dignity and privacy rights of the patient.  *See* ROBERT M. VEATCH, MEDICAL ETHICS 89 (1997).  A patient will fully and candidly disclose his/her full medical history only if the patient believes that the physician will aggressively guard the privacy of such information.  By contrast, if a patient believes that such information cannot or will not be protected, he/she may withhold important facts from the physician.  *See United States. v. Chase*, 340 F.3d 978, 990 (9th Cir. 2003) (en banc) (explaining that candor is essential to the psychotherapist-patient relationship "because patients will be more reluctant to divulge unsavory thoughts or urges" if they know that their information will not be kept confidential and may be disclosed without their consent).  Without a complete picture of the patient's symptoms and medical history, the physician may not be able to provide the patient with effective care and advice.  Worse, the patient may decline to seek medical care at all, thereby allowing a potentially reversible condition to deteriorate or a communicable disease to go unrecognized and untreated.  So essential is the confidentiality and trust to the physician-patient relationship that patients have come to take it for granted and can scarcely imagine their relationship with a physician without it.  *See* VEATCH, MEDICAL ETHICS at 89.

**1.    Protecting the privacy rights of patients in their medical records is essential to preserving human dignity.**

Confidentiality has long been recognized as essential to respecting a patient's human dignity.  As autonomous individuals, each of us defines our relationship with others, in part, based on what information we chose to share with them.  While we may seek to share intimate or embarrassing details of our lives with close family members and friends, we typically will not share the same information with casual acquaintances or business associates.  Controlling the dissemination of this information allows each of us to shape our relationships

and control who we choose to allow into our confidences.  *See* VEATCH, MEDICAL ETHICS at 89-90.

When someone violates our trust and discloses this information without our consent, it is natural to feel personally violated.  This disclosure allows others into our inner circle of intimacy without our consent and uses our private information in a way that is disrespectful and degrading to our autonomy.  *Id.*  For these reasons, medical ethics has long recognized that the right of patients to control private information about their lives and health is essential to the patient's dignity and that unwarranted intrusion into patients' privacy can lead to a breakdown of the necessary trust between physicians and their patients.  *Id.*

## 2.   Disclosure of patient medical records will cause a chilling effect on physician-patient communications.

Medical records reflect all the important events of a patient's medical progress, and track a patient's response to different treatments over time.  As a result, physicians rely on the medical records for proper medical care, making it critical that such records contain a complete, accurate, and reliable portrait of the patient's medical history.  "The importance of the medical record, therefore, cannot be understated because it becomes the physician's primary source of information about the patient's prior complication and prescribed medications."  Roger E. Harris, The Need to Know Versus the Right to Know: Privacy of Patient Medical Data in an Information-Based Society, 30 Suffolk U. L. Rev. 1183, 1186 (1997).

The disclosure of a non-party's private medical records, or the fear of such disclosure, will cause a chilling effect upon the communication between patients and their physicians.  *See, e.g.,* Danel Michelle Nickel, Note: Casting the Discovery Net Too Wide: Defense Attempts to Disclose Nonparty Medical Records in a Civil Action, 34 Ind. L. Rev. 479, 488 (2001); *see also R.K. v. Ramirez*, 887 S.W.2d 836, 840 (Tex. 1994); Lawrence O. Gostin, Health Information Privacy, 80 Cornell L. Rev. 451, 490-91 (1995).  This chilling effect neutralizes the health benefits associated with medical information contained in the medical records.  Harris, 30 Suffolk U. L. Rev. at 1197-98; *R.K. v. Ramirez*, 887 S.W.2d at 840 (noting chilling effect and recognizing that protecting privacy "encourage[s] the full communication

necessary for effective treatment.").  If patients anticipate the possible disclosure of their private

medical information they may be reluctant and inhibited from sharing pertinent information,

especially if that information is embarrassing or otherwise confidential, for fear that the

information will be publicly exposed.  *United States. v. Chase*, 340 F.3d at 990.  As one author

has succinctly remarked:

> Without trust that personal, sensitive information that they share with their
> doctors will be handled with some degree of confidentiality … patients will be reluctant to
> accurately and honestly disclose personal information, or they may avoid seeking care
> altogether for fear of suffering negative consequences, such as embarrassment, stigma, and
> discrimination.  Goldman, J., *Protecting Privacy To Improve Health Care*, Health Affairs
> (Nov./Dec. 1998) at 47.

The very nature of the medical process – which begins with a physician listening

to the patient's complaints and concerns, performing physical examinations, and diagnosing the

problem – requires the patient to be completely open and candid with her physician in order for

the physician to gain an accurate understanding of the patient's medical problem, other aspects

of the patient's heath and medical history that could lead to side effects, and determine the best

possible course of treatment.  The patient's emotional state and personal values and preferences

are a critical piece of this analysis as well, and can greatly effect the outcome of any treatment.

Harris, 30 Suffolk U.L. Rev. at 1197-98; U.S. Congress, Office of Technology Assessment,

*Protecting Privacy in Computerized Medical Information*, OTA-TCT-576 (Washington D.C.;

U.S. Government Printing Office, September 1993) at 30 (recognizing importance of patient

disclosure of medical information to physician.).  This understanding is threatened if that open

and free communication is hobbled.  If patients are not completely open and frank with their

physician, the result could be the "improper diagnosis and treatment of important health

conditions."  Chari J. Young, Note, Telemedicine: Patient Privacy Rights of Electronic Medical

Records, 66 UMKC L. REV. 921, 930 (1998); *see also* Anne Bowen Poulin, The

Psychotherapist-Patient Privilege After Jaffee v. Redmond: Where Do We Go from Here?, 76

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

6

WASH. U. L.Q. 1341, 1405 (1998).  As one commentator has noted, "[i]mmediate concerns about gaining better health may bend to the fear of being shunned by society and denied opportunities to pursue personal and professional endeavors."  Nickel, 34 Ind. L. Rev. at 489. This destabilizing fear that is a natural reaction to the threat of disclosure of intimate personal information underscores the need to preserve the confidentiality of such information.

A woman puts herself in a particularly vulnerable position when she is revealing the details of her medical and sexual history to a physician and must feel safe and protected to be able to provide all the details pertinent to her medical care.  Anything that might cause the patient to lose trust in the confidential nature of the information she shares to aid in a diagnosis or in the provision of medical care will undoubtedly cause a collapse in that communication. When the additional sensitivity of abortion is considered, the stakes are considerably higher, and the usual need for trust and protection of the privacy of communication is heightened.  In addressing this very issue of the discoverability of medical records, the U.S. District Court for the Northern District of Illinois recently stated "the ability to communicate freely without fear of public disclosure is the key to successful treatment," and it took particular note of the importance of this free communication between a woman and her doctor when making a decision on abortion, an "issue[] indisputably of the most sensitive stripe."  *National Abortion Fedn.*, 2004 U.S. Dist. LEXIS 1701, *18 (N.D. Ill. Feb. 6, 2004).

**B.    Confidentiality of Medical Information Must Be Stringently Protected and Maintained.**

In our fast-paced society in which information may be disseminated electronically with only a few keystrokes, the confidentiality of personal information has become seriously endangered.  Loss of such confidentiality can have a pernicious impact on the stability and security of an individual's relationships and opportunities.  Of all such information, personal medical information is perhaps the most precious and increasingly imperiled.

Welch, C., *Sacred Secrets—The Privacy of Medical Records*, 345 New England J. Med. 371 (Aug. 2001).  The continuing assault on patient privacy makes the protection of medical records even more important in this case.  An individual's medical record may disclose

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

7

profoundly intimate and sensitive details about the individual's thoughts, feelings, and personal events.  In any situation where personal medical information is disclosed the resulting loss of privacy to the patient is profound.  A person's entire sense of self can be drastically altered by the untoward disclosure of such facts.

Again, the loss of personal privacy is even greater in situations where abortion is concerned.  Perhaps no medical issue carries the same level of emotional weight, and the personal privacy of those involved in these procedures must be fiercely protected from disclosure.  Therefore, medical records relating to late-term abortions are uniquely sensitive. As recognized by one court:

> Surely no aspect of a woman's medical profile is more sensitive in terms of privacy interests than her obstetrical-gynecological history.  It is precisely in the areas of marriage, procreation, sexual relations and contraception, family relationships, along with child rearing and education that the United States Supreme Court has recognized a federally protected guarantee of personal privacy and a concomitant privacy interest in the intimate medical problems of family, marriage, and motherhood.

*Jones v. Superior Ct.*, 119 Cal. App. 3d 534, 549-50 (1981), *citing Loving v. Virginia*, 388 U.S. 1, 12 (1967) (marriage); *see also Skinner v. Oklahoma*, 316 U.S. 535, 541-542 (1942) (procreation); *Eisenstadt v. Baird*, 405 U.S. 438, 453-454 (1972) (sexual relationships and contraception); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (family relationships), *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925) (child rearing).

### 1.    The Health Insurance Portability and Accountability Act of 1996 and California law precludes an order compelling disclosure of these records.

The protections of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, §§ 261-264 (Aug. 21, 1996), and California law preclude an order compelling production of these documents.  As recently noted by the U.S. District Court for the Northern District of Illinois in a case strikingly similar to the one at bar, HIPAA and its subsequent regulations govern the federal protection of the privacy of patient medical records held by hospitals.  *National Abortion Fedn.,* 2004 U.S. Dist. LEXIS 1701, *15; *United States ex. rel. Stewart v. Louisiana Clinic*, 2002 U.S. Dist. LEXIS 24062, *3 (E.D. La.

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

8

Dec. 12, 2002); 45 C.F.R. §160.203(b).  Although HIPAA and its regulations generally supercede state law, HIPAA "demands" application of state law if state health information privacy law is "more stringent" than HIPAA requirements.  *National Abortion Fedn.*, at *16. California's law concerning when nonparty patient medical records may be subject to discovery is much more protective of patient's privacy than are HIPAA's regulations, which permit a hospital to disclose medical records when ordered to do so in judicial proceedings if the information is used only for the purposes of the litigation.  45 C.F.R. § 164.512(e)(1).  Because it is "Congress' desired outcome under [HIPAA that] state medical privacy law supercedes less protective federal regulations," California law controls and defendant's motion must be denied. *National Abortion Fedn.*, at *16-17.

The state of California has sought, through its laws and through amendments to its Constitution, to protect the privacy of its citizens and their medical records.  Without regard for these interests, the defendants have demanded that California hospitals and clinics to disclose a broad range of private and highly personal medical records of California citizens without only minimal redaction.  To force the hospitals and clinics to comply with this burdensome and overbroad discovery request, however, would ignore the settled privacy expectations of the citizens of California and disregard the state of California's compelling interest in regulating the relationship between doctors and their patients and in protecting the privacy rights of its citizens.  The physicians of the CMA and SFMS and the patients they treat have come to rely the protections that California law provides.  We ask the court to preserve these protections and reject defendant's unwarranted discovery request.

    a)    **California's statutory physician-patient privilege precludes disclosure of the medical records.**

Subject to limited statutory exceptions that are inapplicable here,  the California Evidence Code section 994 provides that a "patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and physician."  The statutory privilege absolutely protects disclosure of all "confidential communications," which is "broadly defined to include any diagnosis made and

advice given by the physician in the course of the physician-patient relationship." *Jones v. Superior Ct.*, 119 Cal. App. 3d 534, 548 (1981); *see also* Cal. Evid. Code, § 992; *Britt* v. *Superior Court,* 20 Cal.3d 844, 862, fn. 7 (1978).  The purpose of this privilege is to avoid humiliation to the patient, and to promote free communication between a patient and her physician.  *Brillantes v. Superior Court*, 51 Cal. App. 4th 323, 334 (1996); *Palay v. Superior Court*, 18 Cal. App. 4th 919, 927-28 (1993).  This privilege acts as a complete bar to discovery of information, even if that information is relevant to the litigation.  Cal. Code of Civ. Proc., § 2016(b); *Jones*, 119 Cal. App. 3d at 544; *Rudnick v. Superior Court*, 11 Cal.3d 924, 929 (1974).

### b) The State Constitutional right of privacy provides vigorous protection to the contents of a patient's medical record.

In addition to the statutory privilege, in 1972, through the initiative process, the people of California sought to give expanded and robust *constitutional* protection to the privacy of personal information.  Cal. Const., Art. I, sec.1.  The courts have recognized that one of the most important applications of this constitutional protection of privacy is to protect patients' personal medical information from invasion, both by private citizens as well as the state.  *Jones*, 119 Cal. App. 3d at 549; *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Chico Feminist Women's Health Center v. Scully*, 208 Cal. App. 3d 230, 242 (1989); *Wood v. Superior Court* 166 Cal. App. 3d 1138 (1985); *Board of Medical Quality Assurance v. Gherardini*, 93 Cal. App. 3d 669 (1979).  Courts have specifically recognized that this state right to privacy extends to protect information about a citizen's participation in an abortion procedure.  *Chico Feminist Women's Health Center v. Scully*, 208 Cal. App. 3d 230, 241-42; *see also People* v. *Stockton Pregnancy Control  Medical Clinic, Inc.*, 203 Cal. App. 3d 225, 241 (1988); *Planned Parenthood Affiliates* v. *Van de Kamp*, 181 Cal. App. 3d 245, 276-278 (1986); *Binder* v. *Superior Court*, 196 Cal. App. 3d 893, 901 (1987).

The constitutional right to maintain private medical records as privileged encompasses a greater universe of communications and information than the "confidential communications" protected by the statutory physician-patient privilege.  As stated in *Board of Medical Quality Assurance v. Gherardini*, 93 Cal. App. 3d at 678, "a person's medical profile is

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

10

an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected . . . ." and "[t]he individual's right to privacy encompasses not only the state of his mind, but also his viscera, detailed complaints of physical ills, and their emotional overtones."

Because of the great sensitivity of intimate medical information, any intrusion into this area must meet an extremely high standard of scrutiny, *Wood*, at 1147-1148; *Gherardini*, at 680, and "requires a balancing of the juxtaposed rights" of the patients whose records would be disclosed with the "legitimate interests of real parties in preparing their defense." *Jones*, at 550 (internal quotation marks omitted); *see also Planned Parenthood Golden Gate v. Superior Court*, 83 Cal. App. 4th 347, 360 (2000); *Gherardini*, 93 Cal. App. 3d at p. 681; *see also Britt* v. *Superior Court*, 20 Cal.3d 844; *Valley Bank of Nevada* v. *Superior Court*, 15 Cal.3d 652 (1975), 657 (1975).  Thus, the privacy interests of the patients "must be carefully weighed against the legitimate interests of real parties in preparing their defense." *Jones*, at 550.

**(1)     A balancing of interests clearly favors protection of the medical records in this case.**

Balancing the interests involved in this case clearly demonstrates that the medical records of patients who have had abortions must be protected from disclosure.  As noted in *National Abortion Federation*:

> American history discloses that the abortion decision is one of the most controversial decisions in modern life, with opprobrium ready to be visited by many people upon the woman who so decides *and the doctor who engages in the medical procedure*. An emotionally charged decision will be rendered even more so if the confidential medical records are released to the public, *however redacted*, for use in public litigation in which the patient is not even a party.  Patients would rightly view such disclosure as a *significant intrusion on their privacy*.

2004 U.S. Dist. LEXIS at *18 (emphasis added).  This significant intrusion on the privacy of all the patients whose medical records would be disclosed (and their physicians) must therefore be balanced against the loss to the defendant if the court prevents the disclosure of these records.

1

2

The government argues that the records are relevant to show whether intact D&E

abortions are ever medically necessary.  Yet the government's main argument is that Congress

exhaustively reviewed available medical evidence and conclusively rules out any need for a

health exception.  Thus, the probative value of the actual medical records of non-party patients

for this purpose is slight, especially in light of the ready availability of other sources of such

information.  As recognized by the *National Abortion Federation* Court, "[t]he presence or

absence of medical risks, their likelihood and nature are undoubtedly described and discussed in

available medical literature."  *National Abortion Fedn.*, at *19.  In addition, the evidence

purportedly relied upon by Congress in arriving at its "findings" that the challenged abortion

method is "never medically necessary" is undoubtedly available to the defendant and can be

used to counter plaintiffs' arguments in this case.[1]  Assuming *arguendo* that the medical records

defendant seeks would provide some small additional relevant evidence, when that trivial

incremental value is "contrasted with the potential loss of privacy that would ensue were these

medical records used in a case in which the patient was not a party, the balance of harms

resulting from disclosure *severely outweighs* the loss to the government through non-

disclosure."  *Id.* at *20 (emphasis added).

> **(2)      The discovery sought by defendant is not narrowly
> tailored to serve only its articulated interest(s).**

Even if the defendant could establish a compelling need for the medical records

in this case that outweighed the patients' interests in the privacy of those records, the discovery

order sought is not narrowly tailored to serve only the defendant's stated interest.  *Wood*, 166

Cal. App. 3d at 1148.

Despite its protestations to the contrary, the discovery defendant seeks is *not*

narrowly tailored to obtain only information related to the medical necessity of late-term

abortions, the defendant's argued relevance of the records.  Indeed, the lack of a close fit

---

[1]      To the extent that the government contends that such evidence can only be obtained by
its unwarranted intrusion into the private medical records of patents who have sought abortions,
such argument effectively concedes that the Act has no basis in medical fact in the first place.

between the governments asserted interest and the significant breadth of the discovery requests simply underscores that the foreseeable effect of the discovery will be to create a broad chilling effect between doctors and patients of the targeted hospitals and clinics.  For example, the request seeks the complete medical records of all those patients who received second-trimester or later abortions, with redactions permitted only for information that defendant believes could identify the patients' identity (i.e., patient names, social security numbers, and addresses).  The requested order does not allow for the redaction of other information located in the medical records that is not specifically related to the abortion procedure at issue.  Because the medical records of many of these patients undoubtedly contain a great deal of information about the patient's past diagnoses, symptoms, and treatment which are *not* directly related to the abortion, they should not be subject to discovery.  As noted by a commentator, "[m]odern medical records not only contain diagnoses and treatment related data, but also contain personal information such as employment history, financial history, lifestyle choices, and HIV status."  Roger E. Harris, *The Need to Know Versus the Right to Know: Privacy of Patient Medical Data in an Information-Based Society*, 30 Suffolk U. L. Rev. 1183, 1185 (1997).  None of this additional information is necessary for the defendant's stated purpose.  Furthermore, in some instances it is likely that the medical providers at issue will have obtained the patient's *previous* medical records, and therefore the patient's file may have vast amounts of private health information completely unrelated to the issues in this case.

Defendant states that it has "no interest in information that would identify patients who received abortions from these doctors" and that they do not seek "the names, or addresses, or social security numbers, or any other identifying information of the underlying patients."  Motion, at 2.  However, as a practical matter, determining what material could be considered "identifying" and should therefore be redacted is by its very nature a subjective process, and one that is prone to human error.  The redaction of clearly identifying material such as names and addresses provides only the most basic level of protection.  Information that does not appear to identify the patient to the person wielding the redacting tape may in fact be

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

13

extremely identifying to another reader of the same document.  This is especially so because the defendant seeks to have the medical center's name and the providing physician's name left unredacted.  Furthermore, even if only the parties' attorneys and the attorneys' staff looked at the records, disclosure of these women's most personal and private information to even one unwanted person constitutes an unreasonable invasion of their privacy.

The mere redaction of a patent's name *cannot* be guaranteed to protect against the disclosure of the patient's identity, and thus the production of the medical records would divulge sensitive information about individuals.  As noted above, medical records contain a wealth of highly detailed and patient-specific information.  Defendant is simply incorrect that redaction of a patient's name, address or social security number will prevent against the disclosure of identifying information – a review of highly detailed medical records that describe a patient's medical history and other highly personal information about his or her life choices could reveal the patient's identity.  Accordingly, there can be no serious question that individual patient identities could potentially be gleaned from careful scrutiny of at least certain medical records, even if redacted.  Because of this risk, and because of the questionable value to the defendant of the records in the first place, the balance tips sharply against their discovery, the court should not sanction discovery that will inevitably cast a broad chill over patients seeking high quality medical care and physicians trying to provide it.

> **(3)     The seriousness of the intrusion is enhanced by the fact that the defendant is a governmental actor.**

Although California's Constitutional privacy protection for medical records applies to private actors as well as the government, the fact that the information is being sought by the Attorney General, rather than by a private party, raises the stringency of the standard of review.  The government has far greater power than any private actor to intrude upon various aspects of a person's life, and great power can be easily abused.  This is precisely the reason that all federal and most state constitutional prohibitions and requirements operate only against governmental, rather than private, actors.  In our society, governmental invasion into an individual's private life must always be carefully circumscribed.

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

14

### 2. Federal common law recognizes a physician-patient privilege which precludes an order compelling disclosure of these records.

Even if the Court applies federal common law here, despite the fact that HIPAA (and therefore California law) controls the issue of medical information disclosure, the Court should conclude that the government's Motion is precluded by the federal common law physician-patient privilege. Under the Federal Rule of Evidence 501, federal courts are authorized to define new privileges where necessary by interpreting "common law principles . . . in light of reason and experience." Fed. R. Evid. 501; *see also Jaffee v. Redmond*, 518 U.S. 1, 8 (1996). Relying on such reason and experience, in 1996, the Supreme Court affirmed that federal common law recognized the existence of a psychotherapist-patient privilege, on the grounds that in this relationship "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Jaffee*, 518 U.S. at 11.

For similar reasons, the *National Abortion Federation* Court held that the rationale for recognizing a privilege between a psychotherapist and patient also compelled the recognition of such a privilege between a woman and her physician in abortion-related instances. *Id*. at *20 ("Reason and experience dictate that Federal Rule of Evidence 501 . . . recognizes a physician-patient privilege in the circumstances of this case, that is, matters relating to abortion.") The court recognized that issues of abortion are uniquely sensitive and that the disclosure of medical records for use in public litigation will make abortion decisions even more emotionally charged than they currently are. As the National Abortion Federation Court explained, "American history discloses that the abortion decision is one of the most controversial decisions in modern life, with opprobrium ready to be visited by many upon the woman who so decides and the doctor who engages in the medical procedure." *Id*. at *19. Therefore, "[p]atients would rightly view [the disclosure of their medical records relating to abortion] as a significant intrusion on their privacy." *Id.* This severe intrusion is in stark contrast to the slight loss that those seeking discovery of that information face, given that information about the risks of abortion and other related information is widely available in medical literature. *Id*. at 19.

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:   C 03-04872 (PJH)

15

The holding in *National Abortion Federation* is clearly on all fours with the situation presented here.  As in *National Abortion Federation*, the government here seeks to compel disclosure of private and highly sensitive medical records on the mere *possibility* that it may discover relevant evidence regarding the necessity of the proscribed procedure, even though information regarding the necessity of the procedure is already described and discussed in the available medical literature.  *Id*. at 19.  The government's interest in this information cannot compare, however, to the potentially devastating loss of privacy that would result from the use of these medical records and the related damage to relationships between physicians and their patients.  For these reasons, the  physician-patient privilege should be adopted and applied by this Court, precluding the requested order to compel.

### C.   Physicians Who Perform Abortions May Face Increased Dangers if Their Identities Are Disclosed.

As Congress found in its hearings regarding the Freedom of Access to Clinic Entrances Act of 1994, hundreds of doctors in this country have been the victims of death threats, assaults, kidnappings or even murder because they provide abortions.  Sen Rep. No. 117, 103s Cong. 1st Sess., pp. 7, 14 (1993).  According to Congress, this "systematic and nationwide assault" on abortion providers and the fear that doctors are forced to live with as a result "threatens to exacerbate an already severe shortage of qualified providers available to perform safe and legal abortions in this country."  *Id.*

As part of the systematic and nationwide assault of physicians, abortion opponents have sought the names and contact information for physicians who provided abortions and have used this information to intimidate and threaten the safety of physicians.  As just one well-known example, a website known as the "Nuremberg Files" collected and displayed information on physicians including their names, work addresses, home addresses, automobile plate numbers and other identifying information.  To keep track of (and perhaps encourage) attacks on physicians, the website used different typesettings in its legend to indicate the status of the physician.  Black type indicated that the physician was "working."  Greyed-out

type indicated that the physician was "wounded." A line through the physicians name indicated that the physician had been killed. *See Planned Parenthood*, 83 Cal. App. 4th at 361.

Given the threats and violence against physicians, there was nothing "inappropriate" about Planned Parenthood redacting their names from the records produced in discovery. Physicians are understandably alarmed whenever their names are disclosed in connect with the abortions services they provide without their consent. Thus, even where there is no evidence that the real parties or their counsel will invade the privacy interests of physicians or increase the danger they face, the names of physicians should be protected from unnecessary disclosure. *See Planned Parenthood*, 83 Cal. App. 4th at 363 (holding that Planned Parenthood could not be forced to disclose identifying information regarding their staff and volunteers to opposing counsel and the plaintiff under a protective order because the substantial privacy interests at stake outweighed the plaintiff's interest in the information, even where there was "no evidence that real parties or their counsel [would] invade" the privacy interests of Planned Parenthood's staff and volunteers).

## IV.    CONCLUSION

Maintaining the confidentiality of medical records is of fundamental importance to a meaningful and effective physician-patient relationship. Disclosing the most intimate details of these patients' medical histories will create an un-healable wound in the trust that patients have in the secrecy of their personal information. If patients fear disclosure of their private medical information it will have a chilling effect upon the communication between patients and their physicians, which will necessarily erode the quality of care that physicians can provide. This chilling effect is not limited to those women whose medical records are sought by the defendant in this case. Rather, the sense of betrayal and fear would reverberate through the entire public, affecting the quality of medical care for all patients. This damage alone provides good reason to protect the records from disclosure.

In addition to the public policy justifications for denying defendant's Motion to Compel, legal precedent necessitates the same result. The privacy and privilege laws of

California, expressly applicable to this case, preclude disclosure of these medical records. The radical intrusion into nonparty private information vastly outweighs the government's need for the documents, and therefore, necessitates an Order denying defendant's motion.

CMA and SFMS and all of their members have an obligation to protect their patients' confidences. CMA and SFMS submit this brief with the hope that the Court will recognize the importance of protecting the medical information of the particular patients at issue, and will recognize the importance of protecting the physician-patient relationship on a wider scale. This court must follow the lead of other courts that have refused to compel the disclosure of medical records in these circumstances.

DATED:  March 3, 2004                           COVINGTON & BURLING


By:   /s/
KURT G. CALIA
Attorneys for Amicus Curiae
California Medical Association and San Francisco
Medical Society

BRIEF OF AMICI CURIAE CALIFORNIA MEDICAL
ASSOCIATION AND SAN FRANCISCO MEDICAL
SOCIETY IN SUPPORT OF PLANNED PARENTHOOD
Civil Case No.:  C 03-04872 (PJH)

18